NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000095
07-NOV-2019
08:08 AM

NO. CAAP-16-0000095

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

BRUCE RYAN NAKAMURA, Plaintiff-Appellant,
v.
UNIVERSITY OF HAWAI'I, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2361)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

Self-represented Plaintiff-Appellant Bruce Ryan Nakamura (**Nakamura**) was a student at, and a part-time employee of, Defendant-Appellee University of Hawai'i (**UH**). He claims that UH failed to stop another UH student from "attempting to impose a relationship on" him by subjecting him to "unwanted advances or unwanted flirting." Nakamura appeals from the **Judgment** in favor of UH entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] on September 18, 2015. Nakamura contends that the Circuit Court erred by granting UH's motion for summary judgment, denying his motion for reconsideration, and failing to allow him to file a second amended complaint. For the reasons explained below, we affirm the Judgment.

---

[1] The Honorable Virginia Lea Crandall presided.

I.

Nakamura's original complaint was filed on August 29, 2013.[2] Named as defendants were Honolulu Community College (**HCC**) and seven individuals who were alleged to be HCC employees. Each individual defendant moved to dismiss the complaint. The Circuit Court granted the motions to dismiss. Nakamura filed two motions for leave to amend his complaint (it appears that the second motion was filed to correct errors in the proposed amended complaint attached to the first motion). The Circuit Court granted leave to amend.

Nakamura's amended complaint was filed on December 19, 2013. It was sixty-six pages long and contained 214 numbered paragraphs. UH was the only named defendant. The amended complaint alleged that Nakamura worked part-time as a lab monitor in UH's HCC computer lab. A female student (**JC**) was a regular user of the computer lab. Nakamura claimed that JC sexually harassed him by pursuing him romantically in the HCC computer lab and in the HCC parking lot. Nakamura alleged that JC is mentally ill, and that he "does not have an organic brain syndrome also known as a mental illness." He claimed to have written to an HCC mental health specialist complaining about JC's behavior, "but all six letters were totally ignored." He claimed to have written six more letters to an HCC vice-chancellor asking for intervention, but the vice-chancellor "never confirmed talking with [JC] about [Nakamura]'s complaints."

Nakamura claimed to have had a conference with three HCC employees "to discuss the problem of [JC]'s unwanted advances." He claimed to have asked for recordings of HCC's

---

[2] We take judicial notice pursuant to Rule 201 of the Hawaii Rules of Evidence (2016) that before filing the action below, Nakamura filed a similar lawsuit in federal court. By order entered on June 18, 2013, the federal court dismissed the lawsuit with leave to amend, stating that "[i]f [Nakamura] seeks to assert only state law claims against Defendants, this court would likely lack jurisdiction, so he should consider filing such an action in state court." Order: (1) Granting Defendants' Motions to Dismiss, Doc. Nos. 18, 20 & 22; and (2) Denying as Moot Plaintiff's Motion to Amend Complaint, Doc. No. 35, Nakamura v. Honolulu Cmty. Coll., Civil No. 13-00054-JMS-BMK, 2013 WL 3147266, at *7 (D. Haw. June 18, 2013). It appears that instead of filing an amended complaint in federal court, Nakamura chose to file the action below in the circuit court.

parking lot security cameras, but was told there was no video available.  After another alleged incident occurred off-campus (on the street where JC allegedly lives), Nakamura claimed to have written nine letters to an HCC vice-chancellor complaining about JC's alleged behavior.  The vice-chancellor and an HCC mental health specialist telephoned Nakamura and asked to see him in person.  Nakamura asked them why.  They did not answer.  Nakamura became upset.  The vice-chancellor cut off the call.  The vice-chancellor then allegedly sent Nakamura a letter "denying his complaint."  Nakamura claimed to have written "a total of [sixty-seven] letters all over the place" complaining about JC's alleged actions before "his patience ran out[.]"

Nakamura allegedly also reported JC's behavior to the police but was told "that he had to give [JC] [a] warning that she is bothering [him] before the police can get involved."  Nakamura claimed to have randomly encountered JC on the HCC campus mall and told her the "police told me to warn you that if you continue to sit directly in front of me [in the computer lab], the police will be called."  JC reported Nakamura to HCC, and an HCC vice-chancellor sent Nakamura a letter "threatening . . . in polite language that I will be kicked off all HCC campuses if [JC] accuses me of harassment again."  Later, JC allegedly attempted "to take revenge on [Nakamura] by again falsely accusing him of harassing and/or following her, and DEMANDING that he be kicked out from the [HCC] cafeteria or she would report HCC to a higher authority."  (Capitalization in original.)

Nakamura's amended complaint purports to state causes of action for: (1) failure to stop prima facie sexual harassment; (2) failure to stop harassment; (3) failure to stop unwanted advances; (4) gross negligence; (5) dereliction of duty; (6) deliberate indifference; and (7) failure to promote an academic environment conducive to learning.  In addition to an award of damages, the amended complaint seeks to have letters of reprimand or censure sent to various HCC employees and to transfer some of them to middle and elementary schools, and a

letter "to advise [JC] not to jump to negative conclusions if she sees [Nakamura] on the HCC campus, its cafeteria, on [the street where JC allegedly lives], which is a public street with public sidewalks or the University of Hawaii campus or anywhere else."

On March 3, 2015, UH filed a motion for summary judgment (**MSJ**). An order granting UH's MSJ was entered on August 12, 2015. Nakamura moved for reconsideration. An order denying reconsideration was entered on December 8, 2015. This appeal followed.

## II.

UH notes — accurately — that Nakamura's opening brief fails to comply with Rule 28(b)(3), (4), and (7) of the Hawaiʻi Rules of Appellate Procedure (**HRAP**) (eff. 2015). UH contends that we should disregard Nakamura's points of error pursuant to HRAP Rule 28(b)(4) and dismiss his appeal. However, because Nakamura is self-represented, and because it is our policy to reach the merits of an appeal if possible, Housing Fin. & Dev. Corp. v. Ferguson, 91 Hawaiʻi 81, 85-86, 979 P.2d 1107, 1111-12 (1999) (quoting Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995)), we will address Nakamura's arguments to the extent we can ascertain them. See also O'Connor v. Diocese of Honolulu, 77 Hawaiʻi 383, 386, 885 P.2d 361, 364 (1994).

## A.

Nakamura contends that the Circuit Court erred by granting UH's MSJ. We review a circuit court's grant of summary judgment de novo using the same standard applied by the circuit court. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Id. at 342, 418 P.3d at 1198. A fact is material

4

if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  Id.

Count I of Nakamura's amended complaint alleged sexual harassment.  Sexual harassment is a form of discrimination prohibited by Hawaii Revised Statutes (**HRS**) § 378-2 (Supp. 2012).[3]  Nelson v. Univ. of Hawai'i, 97 Hawai'i 376, 387, 38 P.3d 95, 106 (2001).  There are two different forms of sexual harassment: "quid pro quo" and "hostile environment."  Id.  "Quid pro quo" cases involve allegations that an employer conditioned employment benefits on sexual favors.  Id.  That situation is not presented here.  "Hostile environment" sexual harassment (**HESH**) is defined as:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or visual forms of harassment of a sexual nature constitute sexual harassment when . . . [t]hat conduct has the purpose or effect of unreasonably interfering with an individual's work performance **or** creating an intimidating, hostile, or offensive working environment.

Id. (quoting Hawaii Administrative Rules § 12-46-109(a)(3)).  To prove an HESH claim a claimant must show that:

> (1)  [they were] subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature;
>
> (2)  the conduct was unwelcome;
>
> (3)  the conduct was severe or pervasive;
>
> (4)  the conduct had the purpose or effect of either:
>
>   (a)  unreasonably interfering with the claimant's work performance, **or**
>
>   (b)  creating an intimidating, hostile, or offensive work environment;

---

[3]     HRS § 378-2 provides, in relevant part:

It shall be an unlawful discriminatory practice . . . [b]ecause of . . . sex . . . [f]or any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]

(5)     the claimant actually perceived the conduct as having
         such purpose or effect; and

(6)     the claimant's perception was objectively reasonable
         to a person of the claimant's gender [identity] in the
         same position as the claimant.

Id. at 390, 38 P.3d at 109 (reformatted).  Nakamura's opening
brief concedes that there are no facts supporting the "sexual
element" of his HESH claim, and states that he "has decided to
drop Count 1 Failure [sic] to stop prima facie sexual harass-
ment."  The Judgment is affirmed as to Count 1.

        Counts 2 and 3 claim that UH failed to stop JC's
alleged "harassment" and "unwanted advances."  To the extent
those counts could be construed to plead sexual harassment,
summary judgment was appropriate because of Nakamura's concession
that there are no facts supporting the "sexual element" of an
HESH claim.  To the extent those counts could be construed to
allege some other tort claim, such as negligence, "[a] basic tort
principle is that breach of a legal duty is an essential element
of any cause of action[.]"  Fink v. Kasler Corp., 3 Haw. App.
270, 273, 649 P.2d 1173, 1175 (1982) (citations omitted).  The
general rule is that a person does not have a duty to act
affirmatively to protect another person from harm.  Lee v.
Corregedore, 83 Hawaiʻi 154, 159, 925 P.2d 324, 329 (1996).
Exceptions to this general rule exist where there is a "special
relationship" between a "defendant and either the third person
who may threaten harm or the party who is the [potential] victim
of the harm[.]"  Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw.
376, 386, 742 P.2d 377, 384 (1987).  "In determining whether such
a relationship exists, [the] court looks to section 314A of the
Restatement (Second) of Torts, which sets forth a non-exclusive
list of 'special relationships' upon which a court may find a
duty to protect."  Maguire v. Hilton Hotels Corp., 79 Hawaiʻi
110, 113, 899 P.2d 393, 396 (1995) (citations omitted).  The
Restatement (Second) of Torts § 314A (Am. Law Inst. 1965)
provides:

> (1)  A common carrier is under a duty to its passengers to take reasonable action
>
>> (a)  to protect them against unreasonable risk of physical harm, and
>>
>> (b)  to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> (2)  An innkeeper is under a similar duty to [the innkeeper's] guests.
>
> (3)  A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to [the possessor's] invitation.
>
> (4)  One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of [their] normal opportunities for protection is under a similar duty to the other.

In addition to that non-exclusive list, other special relationships may exist because "[w]hether a person owes another a duty reasonably to protect the other from foreseeable harm by a third person depends upon whether the circumstances warrant the imposition of such a duty." Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawaiʻi 34, 71, 58 P.3d 545, 582 (2002).

As a defendant moving for summary judgment on claims for which Nakamura had the burden of proof, UH had the burden of

> either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry [their] burden of proof at trial. Where the movant attempts to meet [their] burden through the latter means, [they] must show not only that the non-movant has not placed proof in the record, but also that the [non-]movant will be unable to offer proof at trial. Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded.

Ralston v. Yim, 129 Hawaiʻi 46, 60-61, 292 P.3d 1276, 1290-91 (2013) (citations omitted). UH submitted evidence showing that it had a written policy on sexual harassment and related conduct, and that its representative met with Nakamura and responded in writing to his concerns. UH representatives also interviewed JC, witnesses identified by Nakamura, and the HCC computer lab supervisor, and informed Nakamura in writing that they "found no evidence of any wrong doing by [JC]" and that they "cannot

substantiate your claims that [JC] has engaged in improper behavior, stalked you, or initiated contact with you either while using the Computer Lab or anywhere else on HCC premises." UH informed Nakamura:

> The evidence did not establish that [JC] did anything other than sit in the computer lab as she is entitled to do. The interviews established that [JC] did not know you. The evidence failed to establish your claim that [JC] engaged in behavior that constituted "stalking". You were informed of the conclusions of this investigation by letter dated October 2011.

The uncontroverted facts of this case are that Nakamura is an HCC student and a part-time HCC computer lab employee who was 57 years old at the time in question. He is not a child. Cf. Doe Parents No. 1, 100 Hawaiʻi at 74, 58 P.3d at 585 (holding that state Department of Education, standing in loco parentis, owed duty to take reasonable steps to prevent reasonably foreseeable harm to elementary school students). He did not reside in a UH dormitory. He has not shown by admissible evidence that there was any special relationship between UH and JC, or between UH and him, that could give rise to a legal duty for UH to control JC, or for UH to protect him from JC's alleged romantic advances. The existence of a duty is entirely a question of law. Bidar v. Amfac, Inc., 66 Haw. 547, 552, 669 P.2d 154, 158 (1983). To the extent Counts 2 or 3 could be construed to allege some tort claim other than sexual harassment, as a matter of law UH owed no legal duty to protect Nakamura from JC's alleged acts or omissions.[4] The Judgment is affirmed as to Counts 2 and 3, and also as to Count 4 which alleges gross negligence.

Count 5 alleges "dereliction of duty." Count 6 alleges "deliberate indifference." Count 7 alleges "failure to promote an academic environment conducive to learning." Nakamura cites

---

[4] Our opinion is based upon the uncontested circumstances of this case; it should not be construed to stand for the proposition that an institute of higher education has no duty under any circumstances to respond to claims of stalking or harassment made by any student.

no authority recognizing those causes of action or enumerating the elements of a prima facie case.[5] His opening brief argues:

> The circuit court could have recognized Count 5 Dereliction of duty as breech [sic] of duty; Count 6 Deliberate indifference as intentional neglect, and considered Count 7 Failure to promote an academic environment conducive to learning, as describing negligence for failing to stop the [JC] problem of unwanted advances despite having adverse impact on Plaintiff's studies. Together with Count 2 Failure to stop harassment and Count 3 Failure to stop unwanted advances, all these counts can be consolidated into one count of negligence in an amended complaint.

As explained above, UH did not owe a tort duty to Nakamura under the uncontroverted facts of this case. The Judgment is affirmed as to Counts 5, 6, and 7.

### B.

"An order granting or denying a motion for reconsideration is reviewed for abuse of discretion; an abuse of discretion occurs where the circuit court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Tax Appeal of Subway Real Estate Corp. v. Dir. of Taxation, State of Hawai'i, 110 Hawai'i 25, 30, 129 P.3d 528, 533 (2006) (cleaned up) (reformatted). The purpose of a motion for reconsideration is to allow a party to present new evidence or arguments that could not have been presented during the earlier adjudicated motion; reconsideration is not a device to relitigate old matters or to

---

[5] "Dereliction of duty" appears to be "a uniquely military offense" under Article 92(3) of the Uniform Code of Military Justice, 10 U.S.C. § 892(3) that was "specifically intended by Congress to ensure the proper performance of duty within the military service." United States v. Blanks, 77 M.J. 239, 242 (C.A.A.F. 2018) (citing United States v. Lawson, 36 M.J. 415, 422 (C.A.A.F. 1993)).

"Deliberate indifference" is a legal standard applied in cases brought under 42 U.S.C. § 1983 for violation of constitutional rights. See Reed v. City & Cty. of Honolulu, 76 Hawai'i 219, 229, 873 P.2d 98, 108 (1994).

"Failure to promote an academic environment conducive to learning" appears to be a claim for "educational malpractice." With one exception, the states that have considered the claim have rejected it. Ross v. Creighton Univ., 957 F.2d 410, 414 n.2 (7th Cir. 1992) (citing cases). Only Montana recognizes such a claim, based on state statutes that place a duty of care on educators. Id. at 414 (citing B.M. v. State, 649 P.2d 425, 427-28 (Mont. 1982)). We decline to recognize such a claim, for the reasons stated by the Seventh Circuit in Ross, 957 F.2d at 414-15.

raise arguments or evidence that could and should have been brought to the court's attention during the earlier motion. Sousaris v. Miller, 92 Hawaiʻi 505, 513, 993 P.2d 539, 547 (2000). Nakamura's motion for reconsideration stated that it presented "new arguments that he could not have presented prior to or during the hearing [on UH's MSJ] because he did not know how the Court would rule on the [MSJ] and the Court's reasoning." The exhibits attached to the motion could have been offered in opposition to UH's MSJ. Nakamura's affidavit attached to the motion purported to authenticate the exhibits; it did not offer any new facts. The memorandum in support of the motion did not cite to any change in the applicable law. The Circuit Court did not abuse its discretion in denying Nakamura's motion for reconsideration.

C.

Nakamura did not file a motion for leave to amend his amended complaint. He contends that he made an oral request for leave to amend during the hearing on UH's MSJ.[6] His opening brief states that his second amended complaint would have "drop[ped] Count 1 Failure to Stop Prima Facie Sexual Harassment" and consolidated Counts 2 through 7 "into one count of negligence[.]" The record on appeal does not contain an order by the Circuit Court disposing of the alleged oral motion to amend.

If a motion for leave to amend had been properly made, and if the Circuit Court had ruled on the motion, we would review for abuse of discretion. Office of Hawaiian Affairs v. State, 110 Hawaiʻi 338, 351, 133 P.3d 767, 780 (2006). Where proposed amendments to a complaint would not survive a motion to dismiss, an appellate court should affirm the denial of leave to amend on futility grounds. Adams v. Dole Food Co., 132 Hawaiʻi 478, 488, 323 P.3d 122, 132 (App. 2014) (citing Office of Hawaiian Affairs,

---

[6] The record does not indicate that Nakamura requested a transcript of the hearing as required by HRAP Rule 10(b) (eff. 2012); no transcript of proceedings was filed by a court reporter through JEFS or JIMS as required by HRAP Rule 10(b)(1)(G). Nakamura attached what appears to be page 31 of a transcript of some proceeding to his motion for reconsideration but no court reporter certification was appended.

110 Hawai'i at 365, 133 P.3d at 794). The amendments described in Nakamura's opening brief would have been futile because, as we explained above, UH did not owe a tort duty to Nakamura under the uncontroverted facts of this case.

### III.

For the foregoing reasons, the Judgment in favor of UH and against Nakamura entered by the Circuit Court of the First Circuit on September 18, 2015, is affirmed.

DATED: Honolulu, Hawai'i, November 7, 2019.

On the briefs:

Bruce Ryan Nakamura,
Self-represented
Plaintiff-Appellant.

Carrie K. S. Okinaga,
Derek T. Mayeshiro,
Associate General Counsel,
for Defendant-Appellee.

Paul Alston,
John-Anderson L. Meyer,
Maile Osika,
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge